## SNYDER v. KELSEY et al.

(Supreme Court, Equity Term, Erie County. December, 1915.)

**1.** EVIDENCE ☞372—ANCIENT DEEDS—ERASURES AND ALTERATIONS.

In an action to determine a claim to realty, where the deed through which defendants claimed, being more than 60 years old, and all the parties thereto being dead, carried erasures and alterations made seemingly with the same ink, the same pen, and at the same time when the deed was drawn, while the erasures and alterations were not essential to defendants' title, so that, even if made after delivery, defendants were not claiming through them, such alterations and erasures, not being of a material character, required no explanation by extrinsic evidence to render the instrument a valid deed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. ☞372.]

**2.** TENANCY IN COMMON ☞15—ADVERSE POSSESSION.

One tenant in common cannot acquire the title of the other by adverse possession, except upon proof that the possession was actually adverse.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. ☞15.]

**3.** LIFE ESTATES ☞8—ADVERSE POSSESSION BY LIFE TENANT.

The possession of a life tenant under the deed granting the estate cannot be adverse to the remainderman.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 24–28; Dec. Dig. ☞8.]

**4.** ADVERSE POSSESSION ☞40—PRESCRIPTIVE TITLE TO LAND—REQUISITE PERIOD OF POSSESSION.

Adverse possession of land must continue for 20 years before it ripens into title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 148–183; Dec. Dig. ☞40.]

Action by Mary Kelsey Snyder to determine a claim to real estate against Adelbert Kelsey and others. Judgment for defendants.

Myron H. Clark, for plaintiff.

Emery, Dudley & Georgi, for defendants.

BROWN, J. On March 27, 1866, Loren Kelsey, Edwin Kelsey, Rachel Kelsey, Martha Kelsey, and Mary Kelsey were the sole owners of the premises described in the complaint as heirs at law of Thomas Kelsey, deceased, and, as grantees of William C. Kelsey, an heir at law of said deceased. On that day Loren Kelsey and Edwin Kelsey conveyed the same premises to Rachel Kelsey, Martha Kelsey, and Mary Kelsey, who thereby became vested with the entire title, as tenants in common, owning an undivided third each. This deed was recorded

January 12, 1870. Rachel Kelsey died November 29, 1891, leaving a last will and testament devising all of her property to Mary Kelsey, which will was duly probated. On April 17, 1896, Martha Kelsey executed and delivered a deed of all her interest in said premises to Mary Kelsey, which deed was recorded January 12, 1915. Under these two conveyances, and as heir at law of Thomas Kelsey, the plaintiff Mary Kelsey claims to own the entire title to the premises in question.

[1, 2] On the 27th day of March, 1866, Rachel Kelsey and Martha Kelsey executed and acknowledged a quitclaim deed to Loren Kelsey of the west 60 acres of the premises described in the complaint, reserving a life estate in all of said premises excepting six acres. This deed was recorded May 16, 1896. Under this deed the defendants claim title to an undivided two-thirds of the west 60 acres of the premises described in the complaint as heirs of Loren Kelsey, deceased; the life estate of Rachel Kelsey and Martha Kelsey having terminated with their death. The validity of this deed is seriously challenged by the plaintiff, she asserting that it bears upon its face such mutilation and alteration that it must be assumed that it was not delivered in its present condition, and that before the defendants can take any title under it a satisfactory explanation of its present condition must be given by them. The mutilation and alteration consists of the drawing of pen and ink lines through the original date of "thirtieth December" and interlining "27 March"; the insertion of "six" over an erasure of the last word of the name of the year; the drawing of pen marks through the names of Edwin Kelsey and Maryette Kelsey, his wife, and Mary Kelsey as grantors; the drawing pen marks through the signatures of Edwin Kelsey and Maryette Kelsey; the removal of the seals once affixed opposite their signatures; and the drawing pen marks through the certificate of Bradley Moore, justice of the peace taking the acknowledgment of Edwin Kelsey and Maryette Kelsey, his wife, on the 27th of March, 1866. Upon the validity of this deed the rights of the parties to this action to the west 60 acres of the premises described in the complaint depends. If this deed operated in March, 1866, as a conveyance to Loren Kelsey, it necessarily follows that the deed of April 17, 1896, by Martha. Kelsey of her interest in the premises to the plaintiff, conveyed simply the life estate of the grantor, and, that estate having been terminated by the death of Martha Kelsey, the plaintiff has no present title in the premises under it.

All the parties to this deed are dead, as well as the justice of the peace who took the acknowledgments and who evidently prepared the deed. We are obliged to determine its validity without the aid of any direct explanation. This deed and the deed from Loren Kelsey and Edwin Kelsey to Rachel, Martha, and Mary Kelsey, were evidently prepared and executed at the same time; at least, they are in the same handwriting, the acknowledgments were taken on the same day, and by the same justice of the peace. The fact that both deeds have been recorded and are produced by the grantees is evidence that both were delivered. Each deed purports to have been executed for the nominal consideration of one dollar, and they are nearly 60 years old. The erasures, interlineations, and alterations all appear to have been made

at the time the deed was prepared; at least, they are in the same handwriting, appear to have been made with the same pen and ink as that used in the preparation of the deed, and by the justice of the peace who took the acknowledgments. No claim is made by any party under this deed to any title to any part of the premises through the parties whose names have been erased. The defendants claim only that it is a good conveyance of the interests of Rachel and Martha Kelsey. There is no interlineation or erasure that would affect their interests. To constitute a good conveyance of two-thirds of the 60 acres to Loren Kelsey, it was not necessary that Edwin Kelsey should be a grantor and execute the disputed deed. His interest was conveyed to Rachel, Martha, and Mary Kelsey by the deed of the same date to them. The attempt to make Edwin Kelsey and his wife grantors and their signatures thereto are meaningless, for they had nothing to convey, if this conveyance to Rachel, Martha, and Mary is to be given any force. All parties give full effect to the last-mentioned deed. If it was intended that Mary Kelsey should have one undivided third of the 95 acres, that Martha and Rachel Kelsey should have two undivided thirds of the 35 acres and a life estate in two undivided thirds of the west 60 acres, and that Loren Kelsey should have two undivided thirds of the 60 acres subject to the life estate of Martha and Rachel Kelsey, these deeds perform that exact service and carry out such intention.

This apparently was a family settlement or partition of the lands of the ancestor of all the parties to these deeds. The alterations or erasures do not add one item to the apparent estate intended to be created, nor do they detract anything from the interest of any party to the deed. The deed would have the same force if no alterations or erasures had been made, assuming that the plaintiff is correct when she alleges that Edwin Kelsey's conveyance to herself, Martha, and Rachel Kelsey is a valid conveyance. The plaintiff is not affected by the erasures and alterations; she was not a grantee therein; the erasure of her name as grantor does not affect her, for she never signed the deed. If the erasures were made after delivery of the disputed deed, and such delivery was before the delivery of the deed by Edwin and Loren Kelsey to Martha, Rachel, and Mary Kelsey, then the plaintiff has no title whatever to any part of Edwin's share, and consequently is not possessed of one-third of the premises. The title created by a delivered deed cannot be defeated by a subsequent erasure of any part of the conveyance. To find that the plaintiff is the owner of one-third of the premises, the finding must be that the deed from Edwin and Loren Kelsey to Rachel, Martha, and the plaintiff was delivered before the disputed deed was delivered, if the finding is to be that the erasures were made in the disputed deed after its delivery. If these erasures were made before delivery, the deed is a valid conveyance; if made after delivery, the title of the defendants is not affected. It is difficult to see how the erasures and alterations impair in any degree the validity of the estate claimed by the defendants. Why should the defendants be compelled to make explanation of the alterations unless they claim some advantage through them? Why

should explanation be demanded of alterations that are meaningless and do not in the slightest degree affect the estate created by the conveyance?

There is authority for the proposition that where an interlineation or erasure is in the same handwriting, and written in the same ink, as the other parts of the deed, the presumption, in the absence of any other proof, is that it occurred prior to the execution and delivery, or at least no inference arises to require explanation. 2 Cyc. 255, citing People v. Minck, 21 N. Y. 539. While the cited case had reference to altered election returns, filed in the proper office and thereby becoming a public document, yet discussion is had of the apparent evidence that the alteration was made before delivery and that therefore explanation was excused. The finding must be that the alterations and erasures are not of a material character and require no explanation by extrinsic evidence to make this paper a valid deed. By it Loren Kelsey on March 27, 1866, acquired title to two-thirds of the west 60 acres of the premises described in the complaint, he died seised of this title, and the defendants upon his death became the owners thereof.

[3, 4] The plaintiff, by possession and occupancy of the 95 acres, acquired no title as against Loren Kelsey. She was a tenant in common with him and could not acquire his title by adverse possession, except upon proof showing her possession to be adverse. By virtue of the deed of April 17, 1896, she had title to Martha Kelsey's life estate; but possession under that deed could not be adverse to Loren Kelsey as remainderman, and her possession prior to 1896 was not adverse to Martha Kelsey. Even assuming the deed of April 17, 1896, to be paper title to the fee, possession under it of the most adverse character would not ripen into a title before April 17, 1916.

The finding must be that the plaintiff is the owner of an undivided one-third of the premises described in the complaint; that the defendants are the owners of an undivided two-thirds of the west 60 acres of the premises described in the complaint.

Let findings be prepared awarding such judgment, with costs to the defendants.